STATE OF NEBRASKA, EX REL. CLARK & LEONARD INVESTMENT COMPANY, V. COUNTY OF SCOTT'S BLUFF ET AL.

FILED APRIL 2, 1902.   No. 11,534.

Commissioner's opinion, Department No. 3.

1. Judgment Against County: LEVY: DISBURSEMENT: WARRANT. Article 6 of chapter 77 of the Compiled Statutes, making provision for the levy and collection of a tax to pay judgments entered against a county or other municipal corporation in this state, contains no special provision for disbursing the fund; hence the usual course of drawing money from the county treasury by obtaining a warrant against the fund must be pursued by the judgment creditor.

2. ———: ———: ———: ———: MANDAMUS. The board of county commissioners should draw a warrant in favor of the judgment creditor for the amount of any judgment tax collected, when demand is made by him therefor, and when any considerable amount has been collected, and is in the hands of the county treasurer applicable to the payment of the judgment; and the duty of the treasurer to pay such warrant may be enforced by mandamus.

ERROR from the district court for Scott's Bluff county. Tried below before GRIMES, J. *Affirmed.*

*Stephen L. Geisthardt,* for plaintiff in error.

*F. A. Wright* and *Gardner & Mann, contra.*

DUFFIE, C.

The Clark & Leonard Investment Company is a judgment creditor of Scott's Bluff county. The petition al-

leges that the judgment is wholly unpaid and in full force and effect; that after the rendition of the judgment the county made provision for the payment thereof by the levy of a tax, a large part of which has been collected, and is now in the hands of the county treasurer; that the amount so collected is sufficient to make a material payment, and that all of the tax so collected is applicable for the payment of said judgment; that the relator has demanded of the defendants that they apply the funds on hand to the payment of its judgment, and have offered to credit such amount as may be paid thereon; that the defendants have failed and refused to make such payment. The prayer is for a writ of mandamus commanding the defendants to pay to the relator the amount in the hands of the treasurer, and to do and perform such other acts and things as may be necessary and proper in the premises. A general demurrer was filed to this petition, which was sustained, and the relator has brought the case here on error.

By demurring to the petition the defendants admit the facts alleged. We have, therefore, a case where it is alleged and admitted that the relator is the owner of a judgment against the county of Scott's Bluff; that a tax has been levied for the payment thereof, and sufficient of the tax collected to discharge a large part of the judgment. That it is the duty of the defendant county to pay a valid judgment can not be denied, and the only defense, as we understand from the briefs on file, is that the relator has failed to procure a warrant from the county authorities authorizing and directing the treasurer to disburse the fund. Section 91, chapter 18, article 1, Compiled Statutes of 1901, defines the duties of the treasurer in disbursing funds in his hands, as follows: "It shall be the duty of the county treasurer to receive all money belonging to the county, from whatsoever source derived, and all other money which is by law directed to be paid to him. All money received by him for the use of the county shall be paid out by him only on the warrants issued by the county board according to law, except where special provision for

the payment thereof is or shall be otherwise made by law."
Section 2, article 6, of chapter 77 of the Compiled Statutes
makes provision for the payment of judgments entered
against municipal corporations in this state: "If the
amount of revenue derived from taxes levied and collected
for ordinary purposes shall be insufficient to meet and pay
the current expenses for the year in which the levy is made,
and also to pay the judgment remaining unpaid, it shall be
the duty of the proper officers of the corporation   *   *   *
to at once proceed and levy and collect a sufficient
amount of money to pay off and discharge such judg-
ments." No provision is made in the statute for disbursing
the fund, and the presumption must obtain that it was the
intent of the legislature that a judgment tax, when col-
lected, should be disbursed and paid out by the county
treasurer as other funds coming to his hands for which no
special provision was made by statute.   Such appears to
have been the opinion of this court in regard to the pay-
ment of interest maturing upon bonds issued, and payable
under the provisions of chapter 35 of the General Statutes
of 1873.   *State v. Thorne,* 9 Nebr., 458.   In that case
the relator applied for a writ of mandamus to compel
the defendant, as treasurer of Adams county, to pay
from the funds in his hands, collected for that purpose,
the interest due on certain precinct bonds, issued by the
commissioners of the county and held by the relator.   Re-
lating to the necessity of a warrant or order directed to
the treasurer for the payment of the interest, Judge LAKE
said : "When these bonds were issued there was no special
provision of statute governing alone the creation and pay-
ment of this sort of indebtedness, but the whole business
was assimilated to that respecting county indebtedness for
a similar purpose, and, like it, was put in charge of the
county commissioners of the proper county, who were not
only required to issue the bonds when voted, but also to
cause to be annually levied, collected, and paid to the hold-
ers of such bonds, a special tax on all the taxable property
within the precinct, sufficient to pay the annual interest

as it falls due, and finally the bonds themselves at their
maturity.   *   *   *   As before stated, the management of
this sort of precinct indebtedness is made to conform to
that of counties of like character.   The sole distinction is
that it concerns a distinct portion only instead of the
whole body of the county.   The money with which to meet
the obligations of a precinct is raised and paid out with the
same formality, and through precisely the same agencies,
as are the ordinary county funds, and, except where there
is some special provision of statute authorizing it, pay-
ment therefrom can be legally made only on 'warrants is-
sued by the county commissioners according to law.'   Sec.
53, ch. 13, General Statutes, 241.   Therefore, to have justi-
fied the defendant in making the payment demanded, the
relator should first have obtained from the county commis-
sioners the proper order for him to do so.   But having neg-
lected this step, the relator was not in a situation to make
a legal demand for the money, and the defendant was right
in withholding it."   This seems to settle the question of
the right of the treasurer to refuse payment of any sum in
his hands upon the relator's judgment until an order from
the county commissioners is presented directing him to
make such payment.   The manner of making payment and
vouching the debt to be paid is regulated by the general
statute, no special provision being found to control.   The
duty of the county and of the commissioners to issue an
order for the payment of money held by the treasurer, col-
lected for the payment of this judgment, can not, however,
be denied.

In *United States v. Buchanan County,* 5 Dill. [U. S. C.
C.], 285, it was held by the circuit court of the United
States that a judgment of the court upon the bonds of the
county issued in aid of a railroad company may be en-
forced by mandamus to compel the levy and collection of
taxes, or, if the amount is already in the county treasury,
applicable to such debts, to compel the county court to
draw a warrant to pay the judgment.   It will be observed
from the language used that Judge Dillon, who delivered

the opinion of the court, seemed to reach the conclusion that a warrant was necessary in order to draw the fund from the county treasury. It was argued at the bar that if the relator was bound to present his judgment to the county commissioners to have the same audited and allowed as other claims, and a warrant issued thereon, the acceptance of the warrant would operate as a satisfaction of his judgment, and that in case of refusal to pay the same he would be driven to another action against the county, and would be no nearer the collection of his claim against the county than when he instituted his first suit. We can not accept this view of the situation. The issue of a warrant directed to the treasurer for the payment of the judgment fund on hand will not operate as a payment of the judgment. In *State v. Cook*, 43 Nebr., 318, it is said: "In the absence of a statute conferring special characteristics upon warrants the authorities are practically unanimous that such instruments are merely devices for properly drawing money from the treasury; they are little more than certificates of indebtedness. 'The warrant is not intended to constitute a new debt or evidence of a new debt * * * but is the prescribed means the law has devised for drawing money from the county treasury.'* An indorsee may sue upon such warrant, not because he has title under the law merchant, but because the indorsement amounts to an assignment of the debt upon which the warrant is issued. The auditing of claims and issuing warrants therefor are not such settlements as to have the force of a judicial proceeding or to estop the corporation issuing the warrant." When the relator obtains a warrant directed to the treasurer for the payment of this money, it will be the duty of the treasurer to pay the same, and, in case of refusal, a mandamus will issue to compel him to perform his duty. In *State v. Gandy*, 12 Nebr., 232, a mandamus was awarded to compel the treasurer to pay county warrants, it appearing that there were sufficient funds in the treasury for that purpose.

*\*Dana v. City of San Francisco*, 19 Cal., 486.

The money collected for the payment of this judgment can be used for no other purpose. Until this judgment is fully paid and satisfied the funds must remain intact. There is no danger that the relator will lose the fund, or that it will be paid out on other demands. The treasurer would himself be liable should he divert the fund. It is probable that the treasurer would not be compelled to disburse funds upon a warrant drawn for a greater amount than he holds to the credit of that particular fund, and, while the creditor could not be compelled to accept payment of his judgment in instalments, still we believe that if he is willing to do so, and makes demand upon the board of county commissioners for a warrant to enable him to draw from the county treasury money collected for the payment of his judgment, it would be the duty of the commissioners to issue to him a warrant for the amount then collected and on hand, although not sufficient to satisfy the judgment in full. Public policy and due regard for the interests of the taxpayers of the county would require the commissioners to disburse the fund as fast as collected in any considerable amount, rather than to have the fund accumulate in the county treasury while interest is accumulating upon the judgment.

For the reasons that the relator has not alleged a demand for a warrant for the payment of the amount collected and in the hands of the treasurer, we recommend that the judgment of the district court be affirmed.

Ames and Albert, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.